UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

In re:                                                                       Case No.: 14-74456-ast
                                                                             Chapter 13

      Raymond E. Zair &
      Christine Zair,

                    Debtors.
-------------------------------------------------------X

## DECISION AND ORDER
## CONFIRMING DEBTORS' CHAPTER 13 PLAN

Pending before the Court is confirmation of the second amended chapter 13 plan (the "Second Amended Plan") of the above-captioned debtors, Raymond E. Zair and Christine Zair, ("Debtors"). The primary issue before the Court is whether Debtors may confirm a chapter 13 plan which provides, *inter alia*, that certain residential real property at which Debtors do not reside may be surrendered and vested in a secured creditor pursuant to 11 U.S.C. § 1322(b)(9)[1] over that secured creditor's objection. For the reasons set forth herein, this Court has determined that a plan may so provide and Debtors' Second Amended Plan is confirmed.

## JURISDICTION

This Court has jurisdiction over this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A), (G), (L) and (O), and 1334(b), and the Standing Orders of Reference in effect in the Eastern District of New York dated August 28, 1986, and as amended on December 5, 2012, but made effective *nunc pro tunc* as of June 23, 2011.

---

[1] Unless otherwise indicated, all statutory references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This decision constitutes the Court's findings of fact and conclusions of law in accordance with Rule 7052 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## BACKGROUND AND PROCEDURAL HISTORY

### *Factual Background*[2]

Debtors are victims of Superstorm Sandy. Their former principal residence, 88 Nebraska Street, Long Beach, New York 11561 (the "Property"), is located on a barrier island which was pummeled by the hurricane in October 2013. Due to the damage, Debtors purchased and moved to a new home at 2466 New York Ave., Melville, New York 11747 (the "Residence"), where they lived when they filed for chapter 13 bankruptcy protection on September 30, 2014 (the "Petition Date") and continue to live. [dkt item 1]

According to Debtors' amended Schedule A, the Property was worth $255,000.00 at the Petition Date, and was encumbered by two mortgages: a first mortgage held by HSBC Bank USA, N.A. ("HSBC") with an outstanding balance of $387,185.41, and a second mortgage held by Bank of America, N.A. ("BofA") with an outstanding balance of $30,437.51.[3] [dkt items 13, 16] HSBC filed a proof of claim on November 26, 2014, identified as Claim 4-1, asserting a secured claim in the amount of $440,380.68, including interest, fees and pre-petition arrearages.

On April 20, 2015, HSBC filed a motion for relief from the automatic stay to resume its foreclosure of the Property, alleging cause pursuant to 11 U.S.C. § 362(d)(1) (the "Lift Stay Motion"). [dkt item 25]

---

[2] The factual background and procedural history are derived from the pleadings and exhibits submitted by the parties.
[3] Green Tree Servicing LLC ("Green Tree") filed a proof of claim as servicing agent for BofA on October 9, 2014 [Claim No. 1-1] in the amount of $30,437.51.

On April 23, 2015, the Court issued a briefing and hearing schedule in connection with confirmation.  [dkt item 27]

On April 27, 2015, Debtors filed and served their Second Amended Plan which provides, *inter alia*: that Debtors will retain their Residence; that Debtors are surrendering the Property to HSBC and Green Tree / BofA "in full satisfaction of the secured portion of the first mortgage owed pursuant to 11 U.S.C. Section 1325 and 506"; that title to the Property will be vested in HSBC, its successors, transferees or assigns;  that "[t]his vesting shall not merge or otherwise affect the extent, validity, or priority of any liens on the property"; and "the confirmation order shall constitute a deed of conveyance of the property when recorded with the county clerk's land records." Debtors' Second Amended Plan, ¶ 2.  [dkt item 28]  The Second Amended Plan goes on to provide that all secured claims secured by Debtors' interest in the Property will be paid through "surrender of the Property and foreclosure of the security interests," but that HSBC and Green Tree / BofA will have thirty days from service of a confirmation order to file an unsecured deficiency claim.  *Id.*, at ¶ 7.

### Arguments of the Parties

The chapter 13 trustee (the "Trustee") supports confirmation of Debtors' Second Amended Plan, while HSBC objects.

On April 27, 2015, HSBC filed its objection asserting the following: (1) that Debtors' attempt to vest title to the Property in HSBC is analogous to an impermissible abandonment pursuant to § 554 of the Bankruptcy Code; and (2) because New York is a lien theory state, under which a mortgage creates a lien against the property but does not transfer title of the property to the mortgagee, HSBC does not have a possessory interest in the Property and therefore, Debtors cannot vest title in HSBC (the "HSBC Objection").  *See* HSBC Objection, pp.

2-3. [dkt item 29]  However, HSBC does not oppose the surrender of the Property to it pursuant to § 1325(a)(5)(C).  *Id.*, p. 2, fn. 1.

On April 29, 2015, the Trustee filed her brief in support of confirmation ("Trustee's Brief"), arguing that vesting title in a secured creditor is permitted pursuant to § 1322(b)(9).  In support of her position, she argues, *inter alia*, that Debtors' "fresh start" will be impeded because absent vesting, Debtors will remain responsible for expenses and property taxes incurred in connection with the Property even after they have surrendered the Property.  *See* Trustee's Brief, pp. 6-7.  [dkt item 30]

On May 14, 2015, Debtors filed their brief in support of confirmation ("Debtors' Brief"), largely parroting the Trustee's Brief.  [dkt item 33]

On May 19, 2015, HSBC filed a reply brief (the "HSBC Reply").  [dkt item 34]  HSBC adds the following additional arguments: (1) while § 1322(b)(9) provides for vesting of the property "in the debtor or in any other entity," HSBC is not an "entity" as defined under the Bankruptcy Code; (2) permitting Debtors and the Trustee to vest title in lienholders and encumber them with a "dilapidated property … would open a pandora's box of unintended, injurious consequences"; (3) Debtors have not selected any of the options available under § 1325(a)(5); and (4) policy considerations should prohibit Debtors and the Trustee from forcing a vesting of title that violates state laws governing transfers of property and New York contract law.  HSBC Reply, pp. 3-5.  Finally, HSBC suggests that Debtors and the Trustee conduct a sale of the Property pursuant to § 363 of the Bankruptcy Code over the objections (if any) of the junior secured creditors.

## LEGAL ANALYSIS

### *Statutory Overview and Statutory Construction*

This Court is conducting a statutory, not a policy, analysis to determine if Debtors may vest title over a secured creditor's objection.

A debtor bears the burden of establishing by a preponderance of the evidence that his or her plan satisfies the requirements of the Bankruptcy Code and is appropriate for confirmation. *See In re Merhi*, 518 B.R. 705, 709 (Bankr. E.D.N.Y. 2014). The contents of a chapter 13 plan are governed by § 1322, which is divided between mandatory provisions outlined in § 1322(a) (what a chapter 13 plan "shall" provide), and permissive provisions outlined in § 1322(b) (what a chapter 13 plan "may" provide). At issue here are § 1322(b)(9), which provides that the plan may "provide for the vesting of property of the estate, on confirmation of the plan or at a later time, in the debtor or in any other entity," and § 1325(a)(5),[4] which, as to secured creditors, directs that a bankruptcy court shall confirm a plan only if "one of the following three requirements are satisfied: (1) the holder of such claim has accepted the plan; (2) the debtor's payments to the creditor comply with certain standards and the creditor retains its lien; or (3) the

---

[4] Section 1325(a)(5)(A-C) provides that except as provided in subsection (b), the court shall confirm a plan if
    (5) with respect to each allowed secured claim provided for by the plan –
        (A) the holder of such claim has accepted the plan;…
        (B) (i) the plan provides that--
            (I) the holder of such claim retain the lien securing such claim until the earlier of--
             (aa) the payment of the underlying debt determined under nonbankruptcy law; or
             (bb) discharge under section 1328; and
            (II) if the case under this chapter is dismissed or converted without completion of the plan, such lien shall also be retained by such holder to the extent recognized by applicable nonbankruptcy law;
            (ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; and
            (iii) if--
            (I) property to be distributed pursuant to this subsection is in the form of periodic payments, such payments shall be in equal monthly amounts; and
            (II) the holder of the claim is secured by personal property, the amount of such payments shall not be less than an amount sufficient to provide to the holder of such claim adequate protection during the period of the plan; or
        (C) the debtor surrenders the property securing such claim to such holder….

debtor surrenders the property securing such claim to such holder.  *See AmeriCredit Fin. Servs v. Tompkins*, 604 F.3d 753, 757 (2d Cir. 2010) (citations and quotations omitted).

This Court's analysis necessarily begins with an examination of the statute itself to determine if the statute is either plain or ambiguous.  *See RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 132 S. Ct. 2065, 2073 (2012); *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004); *United States v. Ron Pair Enters.*, 489 U.S. 235, 241 (1989).  "[I]n determining plainness or ambiguity, courts are directed to look 'to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole.'"  *In re Phillips*, 485 B.R. 53, 56 (Bankr. E.D.N.Y. 2012) (quoting *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341, 117 S. Ct. 843, 136 L. Ed. 2d 808 (1997)).  "If the statutory language is clear, a court's analysis must end there." *See Hartford Underwriters Ins. Co. v. Union Planters Bank, Nat'l Ass'n*., 530 U.S. 1, 6, (2000) ("[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms."); *In re AJW Offshore, Ltd.*, 488 B.R. 551 (Bankr. E.D.N.Y. 2013).

However, "[s]tatutory language is ambiguous if it is susceptible to two or more reasonable meanings." *AJW*, 488 B.R. at 558 (quoting *Phillips*, 485 B.R. at 56).  "In that setting, where the plain language as clarified by context fails to resolve any statutory ambiguity, a court may resort to canons of statutory construction to aid in its interpretation." *AJW*, 488 B.R. at 558; (citing *United States v. Colasuonno*, 697 F.3d 164, 173 (2d Cir. 2012); *United States v. Dauray*, 215 F.3d 257, 264 (2d Cir. 2000)).  "Significantly, statutory construction is a holistic endeavor; thus, a statute must be interpreted in light of the statutory scheme as a whole." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., Ltd.*, 484 U.S. 365, 371, 108 S. Ct. 626 (1988); *AJW*, 488 B.R. at 558; *Phillips*, 485 B.R. at 59.

### *Vesting under a chapter 13 plan*

There is limited authority interpreting § 1322(b)(9).  The Trustee primarily relies on the Bankruptcy Court decision in *In re Watt,* 520 B.R. 834, 838-840 (Bankr. D. Or. 2014), which permitted a debtor to vest title to real property in a secured creditor over that creditor's objection.  However, the District Court reversed that decision, holding that § 1325(a)(5)(C) of the Bankruptcy Code unambiguously provides three options to treat a secured claim, one of which is surrender, and that § 1322(b)(9) does not create a "fourth" option of vesting.  *In re Watt*, Case No. 3:14-cv-02051-AA, 2015 WL 1879680, 2015 U.S. Dist. LEXIS 54041, at *13-17 (D. Or. Apr. 22, 2015).  The District Court in *Watt* referred to vesting as "a nonstandard term" and surrender as a right of the secured creditor.  The District Court explained that:

> in confirming a Chapter 13 plan that advanced non-consensual vesting in conjunction with surrender, the bankruptcy court read language into the Bankruptcy Code that does not exist, as well as frustrated the purpose of the statute, which is to provide protection to creditors holding allowed secured claims…. Indeed, the bankruptcy court's interpretation impermissibly transforms the secured creditor's right into an obligation, thereby rewriting both the Bankruptcy Code and the underlying loan documents, while at the same time belying the secured creditor's state-created property rights.

*Watt*, 2015 U.S. Dist. LEXIS 54041, at *16-17.[5]

The Hawaii Bankruptcy Court in *In re Rosa*, like the *Watt* bankruptcy court, held that a debtor could vest title pursuant to § 1322(b)(9) of the Bankruptcy Code because the debtor met the requirements of § 1325(a)(5)(A).  495 B.R. 522, 524-525 (Bankr. D. Haw. 2013).  However,

---

[5] It is unclear from the district court's opinion whether it would have reached a different result if the plan did not provide that the vesting of title would result in full satisfaction of the lender's claim.  In reaching its conclusion, the *Watt* court cited Chapter 13 Practice & Procedure § 5:9, which provides that "a provision in a plan for surrender of encumbered property in full satisfaction of the claim is not permissible under Code § 1325(a)(5)(C) [b]ecause such a provision seeks to require the creditor to accept the encumbered property in satisfaction of its claim, [such that] it must meet the cramdown requirements of Code § 1325(a)(5)(B), unless the creditor accepts it under Code § 1325(a)(5)(A)".  *Watt*, 2015 U.S. Dist. LEXIS 54041, at *16.

in *Rosa*, the secured creditor did not object to the debtor's plan after having received notice and an opportunity to object, and was deemed to have accepted the plan under § 1325(a)(5)(A). *Id*.

The parties have addressed two other decisions: *In re Malave*, Case No. 13-13348 (ALG) [dkt item 23] (April 11, 2014 Bankr. S.D.N.Y.), which held that the debtor could not vest title in the secured creditor in full satisfaction of the debt because the secured creditor had timely objected to the plan, and *In re Rose* 512 B.R. 790, 793-796 (Bankr. W.D.N.C. 2014), in which the court denied the debtor's motion to transfer real property to the secured creditor by quitclaim deed approximately one year after confirmation without the secured creditor's consent. *Malave* principally relied on the Supreme Court's decision in *Associates Commercial Corp. v. Rash*, 520 U.S. 953 (1997) ("*Rash*"), and explained that there is a clear distinction between surrender and vesting title in full satisfaction of the debt.

While this matter was on submission, the Massachusetts bankruptcy court released its decision in *In re Sagendorph, II*, Case No. 14-41675 (MSH), 2015 Bankr. LEXIS 2055, at *17-18 (Bankr. D. Mass. June 22, 2015), in which the court stated that a debtor may utilize both surrender and vesting in a plan, and confirmed the debtor's plan over the secured lender's objection.

The Bankruptcy Code does not define "surrender" as utilized in § 1325(a)(5)(C) or "vesting" as used in § 1322(b)(9). The District Court in *Watt* defined surrender as "the debtor's relinquishment of his or her right to the property at issue, such that the secured creditor is free to accept or reject that collateral," distinguishing it from vesting, which it defined as essentially a "transfer of ownership," eliminating the liability and responsibility of the debtor to do anything in connection with the real property. *See Watt*, 2015 U.S. Dist. LEXIS 54041, at *11 (relying on *In re Gonzalez*, 512 B.R. 255, 259-261 (Bankr. C.D. Cal. 2014)); *In re Arsenault*, 456 B.R. 627,

8

629-30 (Bankr. S.D. Ga. 2011); *Rosa*, 495 B.R. at 524. The *Sagendorph* court noted that, at least in the First Circuit, surrender has been construed to mean that the debtor agreed to make the collateral available to the secured creditor, i.e. "to cede his possessory rights in the collateral," while vesting "plainly means to place one in legal possession or ownership of property." 2015 Bankr. LEXIS 2055, at *5-6. The *Sagendorph* court allowed the debtor to surrender and vest the property in the lender in full satisfaction of the mortgaged debt, noting that there was no genuine dispute that the property was worth more than what was owed to the lender. 2015 Bankr. LEXIS 2055, at *17.[6]

This Court respectfully disagrees with *Watt* and to some extent, with *Malave*, agrees for the most part with *Sagendorph*, and concludes that while surrender and vesting are different, they are not mutually exclusive, and the Bankruptcy Code's plain language permits a debtor to deploy both options in a plan.

### ***Statutory construction***

As Judge Hoffman noted in *Sagendorph*, vesting and surrender are different, and "Congress is presumed to have chosen deliberately the words it includes in a statute." 2015 Bankr. LEXIS 2055, at *13, *citing Univ. of Texas Southwestern Med. Ctr. v. Nassar*, 133 S. Ct. 2517, 2529, 186 L. Ed. 2d 503 (2013). Congress did not provide that a debtor may only vest title to real property under a plan that the lien holder accepts under § 1325(a)(5)(A), nor did Congress limit vesting to personal property. Reading § 1325 narrowly, as the *Watt* court does, essentially eliminates the usefulness of § 1322(b)(9) -- a debtor would not use cram down under

---

[6] The *Sagendorph* court also noted that "A plan proposing to transfer to a mortgagee property that is heavily encumbered or worth significantly less than the mortgage debt without also affording the mortgagee a right to participate as an unsecured creditor for any deficiency claim is another fact-specific example of a plan where a lender could raise an objection based on bad faith or non-compliance with § 1322(a)(3)." *Sagendorph*, 2015 Bankr. LEXIS 2055 at *16.

§ 1325(a)(5)(B) for property it is vesting in another entity -- and *Watt* thus limits a debtor's vesting right to a plan to which the lender consents; however, Congress did not limit vesting to where the creditor consents under § 1325(a)(5)(A).

Further, § 1327(b) provides that unless the plan or confirmation order provides otherwise, "the confirmation of a plan vests all property of the estate in the debtor." 11 U.S.C. § 1327(b). Because § 1327 vesting is not limited to a plan to which a secured creditor consents, allowing a debtor to vest property under the plan in a specific non-debtor entity is consistent with § 1327(b), and avoids any confusion as to ownership of property which is surrendered under the plan also being vested in the debtor. Here, the Second Amended Plan (¶ 6) expressly provides that "Except as provided in paragraphs 2(b) and 7 herein, title to the Debtor(s) property shall revest in the Debtor upon completion of the plan, unless otherwise provided in the Order confirming this plan." Thus, any potential confusion about vesting of the Property is avoided.

### ***Rash and its impact on vesting***

This Court has also considered the impact of the Supreme Court's decision in *Rash*, in which the primary issue was how to establish the value of a truck the debtor was retaining, in order to determine the payments to be made to the secured truck lender to satisfy § 1325(a)(5)(B).[7] 520 U.S. at 955-56. The secured truck lender, ACC, had opposed confirmation and sought relief from the automatic stay. In analyzing § 1325, the Supreme Court stated:

> To qualify for confirmation under Chapter 13, the Rashes' plan had to satisfy the requirements set forth in § 1325(a) of the Code. The Rashes' treatment of ACC's

---

[7] The Supreme Court stated the question as: "We resolve in this case a dispute concerning the proper application of § 506(a) of the Bankruptcy Code when a bankrupt debtor has exercised the 'cram down' option for which Code § 1325(a)(5)(B) provides. Specifically, when a debtor, over a secured creditor's objection, seeks to retain and use the creditor's collateral in a Chapter 13 plan, is the value of the collateral to be determined by (1) what the secured creditor could obtain through foreclosure sale of the property (the 'foreclosure-value' standard); (2) what the debtor would have to pay for comparable property (the 'replacement-value' standard); or (3) the midpoint between these two measurements? We hold that § 506(a) directs application of the replacement-value standard."

> secured claim, in particular, is governed by subsection (a)(5). Under this provision, a plan's proposed treatment of secured claims can be confirmed if one of three conditions is satisfied: the secured creditor accepts the plan, see 11 U.S.C. § 1325(a)(5)(A); the debtor surrenders the property securing the claim to the creditor, see § 1325(a)(5)(C); or the debtor invokes the so-called "cram down" power, see § 1325(a)(5)(B). Under the cram down option, the debtor is permitted to keep the property over the objection of the creditor; the creditor retains the lien securing the claim, see § 1325(a)(5)(B)(i), and the debtor is required to provide the creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, *i.e.,* the present value of the collateral, see § 1325(a)(5)(B)(ii). The value of the allowed secured claim is governed by § 506(a) of the Code.

520 U.S. at 956-57.

In addressing why different valuation methods under § 506 are appropriate based on a debtor's decision to keep or surrender the collateral, the Court stated:

> Tying valuation to the actual 'disposition or use' of the property points away from a foreclosure-value standard when a Chapter 13 debtor, invoking cram down power, retains and uses the property. Under that option, foreclosure is averted by the debtor's choice and over the creditor's objection. From the creditor's perspective as well as the debtor's, surrender and retention are not equivalent acts.

> When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds. We recall here that ACC sought that very advantage… If a debtor keeps the property and continues to use it, the creditor obtains at once neither the property nor its value and is exposed to double risks: The debtor may again default and the property may deteriorate from extended use.

*Id.* at 962. Thus, chapter 13 plan valuation methodology is built on a bi-lateral approach of examining what each side gets, acknowledging that "surrender and retention are not equivalent acts," and the premise that surrender by a debtor results in an immediate realization by the lender of its collateral. *See id.*

HSBC's arguments against vesting contravene the underpinnings of *Rash*. If surrender did not equate to a right to an immediate realization of the creditor's collateral, how should a court value property being surrendered under a plan: based on how long it would take a lender to decide to foreclose?; based on how long it actually takes to foreclose under applicable non-

11

bankruptcy law even without opposition by the debtor?; based on whether there is a co-obligor or co-owner of the property that opposes foreclosure?  Congress has determined that a chapter 13 debtor has the right to shed itself of property that it cannot afford to keep, and a creditor may not oppose a debtor's plan on § 1325 grounds that calls for surrender.  For surrender valuation to be uniform, it should be based on the *Rash* premise that the lender gets immediate access to its surrendered collateral, and vesting of surrendered property is entirely consistent with this approach.

In addition, vesting provides a simplified mechanism to convey legal title to the secured lender which may not be available without the filing of an adversary proceeding. Bankruptcy Rule 7070, which incorporates Fed. R. Civ. P. 70, allows the court in an adversary proceeding to vest title in another entity ("the court may enter a judgment divesting the title of any party and vesting title in others whenever the real or personal property involved is within the jurisdiction of the court.").  However, Bankruptcy Rule 7070 does not automatically apply in contested matters. *See* FED. R. BANKR. P. 9014(c).  Allowing a debtor to vest title through a simplified plan process is consistent with the overall structure of chapter 13 as a more streamlined and less expensive way for wage earners to adjust their financial affairs.  The plan here expressly provides that "the confirmation order shall constitute a deed of conveyance of the property when recorded with the county clerk's land records."

### *Impact of not allowing vesting on Debtor's use of disposable income*

As the Trustee correctly argues, if Debtors were not able to divest themselves of ownership of the Property, they would be left in limbo while HSBC decides whether and when to proceed on its foreclosure action, thus incurring the continued liabilities associated with the property ownership, such as accruing property taxes.  This limbo is inconsistent with the overall

structure of chapter 13.  A chapter 13 debtor has to commit all of her disposable income to her

plan for the duration of the applicable commitment period under §§ 1322(d), 1325(b)(4).  A

debtor who surrenders property will not include costs associated with continued ownership in

calculating disposable income; yet requiring debtors to continue to incur ownership expenses for

surrendered property will either negatively impact the unsecured creditors who will have their

plan payments reduced, or will interfere with the debtors fresh start by leaving them saddled with

post-confirmation expenses they have not provided for in their plan.  This uncertainty is

avoidable through vesting, and allows the debtor to earn a discharge under § 1328 by completing

all plan payments.  *See generally In re Gollnitz*, 456 B.R. 733 (Bankr. W.D.N.Y. 2011).[8]

By vesting title in HSBC, Debtors are left without the uncertainty of when they will be

freed of the obligations of property they have given up, and HSBC may dispose of the Property

without awaiting the conclusion of the foreclosure action.

### *Interplay between bankruptcy vesting and state real property law*

HSBC argues that policy considerations should prohibit debtors from forcing a vesting of

title that violates state laws governing transfers of property; in other words, HSBC expresses

concern that vesting may merge HSBC's lien estate, created under its mortgage, with the fee title

estate it receives from Debtors, thereby merging the two estates and potentially prohibiting

HSBC from foreclosing its mortgage lien and thereby "cleaning up" the record title.  First, this

Court has undertaken a statutory analysis, not a policy analysis.  Second, the Plan expressly

provides that "[t]his vesting shall not merge or otherwise affect the extent, validity, or priority of

---

[8] In *Gollnitz*, the court addressed a confirmed a plan under which the debtors agreed to make monthly payments, and which also authorized one of the debtors to surrender certain property to the secured creditor, but made no specific provision with regard to any environmental obligations.  When the New York State Department of Environmental Conservation asserted a post-petition claim, the court held that because "surrender does not constitute a transfer of title," and the debtor remained obligated to satisfy the environmental regulations with regard to certain fuel tanks at the property. *Id.* at 735  While *Gollnitz* does not specifically reference disposable income, it illustrates a difficulty which can arise where a debtor only surrenders a property but does not convey title as part of confirmation.

any liens on the property."  Debtors' Second Amended Plan, ¶ 2.  [dkt item 28]  Third, as noted

in *Sagendorph*, "the Bankruptcy Code as federal law preempts state law with which it is in

conflict.  *Butner*, which recognizes that property interests are created and defined by state law,

hastens to add 'unless some federal interest requires a different result.'"  2015 Bankr. LEXIS

2055, at *13 (citing *Butner v. U.S.,* 440 U.S. 48, 55, (1979)).

### *Surrender plus vesting does not equal full satisfaction of the secured claim*

Some of the decisions cited by the parties appear to conflate vesting or surrender with full

satisfaction of the debt; this is incorrect.  Although § 1322(b)(8) provides that a plan may

"provide for the payment of all or part of a claim against the estate from property of the estate or

property of the debtor," *Rash* and its progeny require that if Debtors surrender and vest title to

the Property in HSBC effective as of confirmation, the value of the Property still needs to be

determined, which may or may not be equal to the full amount of the HSBC claim.  This is

particularly so where, as here, Debtors scheduled the Property as being worth substantially less

than the balance owed on the first mortgage.  As the Second Circuit stated in *Americredit*,

"nothing in § 1325(a)(5) says that [the] 'allowed secured claim' is satisfied by the debtor

choosing the surrender option in subparagraph (C)."  604 F.3d at 758 (quotations and citations

omitted).[9]

Debtors, however, do not mandate that HSBC accept the Property at an amount greater

than its value, nor preclude HSBC from filing an unsecured claim for any deficiency.  In fact,

while the Second Amended Plan provides that title to the Property will be surrendered to HSBC

---

[9] The Court recognizes that *AmeriCredit* is not squarely on point as it involved the interplay of §§ 506 and
1325(a)(5) and the "hanging paragraph" involving motor vehicles purchased within 910 days before the bankruptcy
filing. The Second Circuit stated "The question presented here concerns the effect of the hanging paragraph not on
the cramdown of vehicles purchased within 910 days of a bankruptcy filing, but on those cases in which a debtor
surrenders a vehicle purchased within this period to his creditor," and held that the lender was entitled to a
deficiency following surrender of the vehicle. *Id.* at 757.

and Green Tree "in full satisfaction of the secured portion of the first mortgage" of HSBC, the

plan also expressly provides that both HSBC and Green Tree / BofA shall have thirty days from

service of a confirmation order to file a deficiency claim, failing which any deficiency claim will

be valued at $0.00.

In *In re Sneijder*, Judge Glenn addressed the "frequently recurring question in chapter 13

cases- namely, how should the Court address a secured mortgage claim when the debtor intends

to surrender the collateral" under a plan.  Judge Glenn stated:

> There are different approaches available to resolve issues about the unsecured
> deficiency: (i) the debtor, secured creditor and the chapter 13 trustee can agree
> before confirmation on the amount of the unsecured deficiency claim (the preferred
> approach); (ii) a debtor or the chapter 13 trustee may object to a claim creating a
> contested matter under Fed. R. Bankr. P. 9014, requiring a court to value the
> collateral under Fed. R. Bankr. P. 3012 and § 506(a), and thereby determine the
> amount of the unsecured deficiency claim; (iii) any party in interest can file a
> motion requesting the court to value the collateral under Fed. R. Bankr. P. 3012 and
> § 506(a); (iv) any party in interest may file a motion requesting the court to estimate
> the unsecured deficiency claim pursuant to § 502(c) if otherwise fixing or
> liquidating the claim would unduly delay the administration of the case; or (v) the
> secured creditor may amend (or seek leave to amend if the bar date has passed) the
> existing secured claim to a partially secured and partially unsecured claim, with the
> amount of the unsecured deficiency claim fixed through a foreclosure sale, a §
> 506(a) valuation hearing, or an estimation proceeding under § 502(c)(1).

*In re Sneijder*, 407 B.R. 46, 48-49 (Bankr. S.D.N.Y. 2009).  *See also In re Gauthier*, Case No.

08-51002 (RS), 2009 Bankr. LEXIS 2284, at *3 (Bankr. W.D. La. July 16, 2009) (court applied

*Rash* and utilized a liquidation value based on the debtor's proposed plan that surrendered the

property).  Here, Debtors have provided both of its secured creditors the right to file a deficiency

claim.[10]  Should the parties disagree as to the amount of any filed deficiency claim, this Court

can determine the allowable amount of such a claim at a later time.

---

[10] The Second Amended Plan also provides that "ALL SECURED CLAIMS SECURED BY DEBTOR'S
INTEREST IN THE PROPERTY WILL BE PAID THROUGH SURRENDER OF THE PROPERTY AND
FORECLOSURE OF THE SECURITY INTERESTS."  The Court does not treat this language as overriding the
paragraph that follows, which expressly provides for the filing of a deficiency claims.

### *HSBC's other arguments are not persuasive*

HSBC's argument that the Bankruptcy Code's definition of "entity" does not permit Debtors to vest title to the Property in HSBC is simply incorrect.  While § 101(15) of the Bankruptcy Code defines "entity" as "person, estate, trust, governmental unit, and United States trustee," § 101(41) of the Bankruptcy Code defines "person" as an "individual, partnership, and corporation…."  HSBC, according to the documents in support of its proof of claim, is a corporation and therefore, both an "entity" and "person" as defined in the Bankruptcy Code.

Further, HSBC need not have a possessory interest in the Property for vesting; while that may be a requirement for abandonment, the Property is not being abandoned under § 554.

Finally, HSBC suggests that this Court follow *In re Boston Generating, LLC*[11] and force Debtors to conduct a sale pursuant to § 363 of the Bankruptcy Code over the potential objections of it and the junior lender in this case.  While this may be expedient for HSBC, it would add cost and complexity to the case for Debtors, and no provision of chapter 13 requires a debtor to seek a § 363 sale in advance of surrendering or vesting title, or otherwise seeking confirmation of a plan.

### *Stay relief is appropriate*

No party-in-interest opposed HSBC obtaining relief from the automatic stay.  The automatic stay should be lifted for cause under § 362(d)(1).

### *Conclusion*

Debtors have complied with the requirement of § 1325(a)(5) by surrendering the Property at confirmation to HSBC and Green Tree / BofA  under § 1325(a)(5)(C).  Debtors permissibly vest title to the Property in HSBC at confirmation under § 1322(b)(9) and, provide that such

---

[11] 440 B.R. 302, 332 (Bankr. S.D.N.Y. 2010).

vesting constitutes a conveyance of title and "shall not merge or otherwise affect the extent, validity, or priority of any liens on the property," Debtors allow each lien claimant to file a deficiency claim, and preserves the ability of the Court to determine the  proper valuation of the Property for purposes of confirmation.

Based upon the foregoing, it is hereby

**ORDERED**, that Debtors' Second Amended Plan is confirmed; and it is further

**ORDERED**, that HSBC is granted relief from the automatic stay to continue with its foreclosure action against the Property; HSBC shall submit a separate order granting stay relief within **fourteen (14) days** hereof; and it is further

**ORDERED**, that the Clerk of the Court shall serve this Decision and Order on Debtors, Debtors' counsel, the Trustee, HSBC, the Office of the United States Trustee and any other party who has filed a notice of appearance.



**Dated: August 13, 2015**
**Central Islip, New York**

_____
**Alan S. Trust**
**United States Bankruptcy Judge**